Um, yes. Good morning. Thank you very much. Um, my plan is to reserve, um, five minutes for, uh, rebuttal. Council, would you please identify yourself for the record? Yes, I'm so sorry. Thank you. I'm Jennifer Geisler appearing for appellants. County of Los Angeles defendants. So, Council, please be reminded that the time shown on the clock is your total time remaining. Very good. Thank you. So thank you so much. Thank you. Um, we have, um, filed this appeal based on denial of emotion for summary judgment, uh, in which we had alleged qualified immunity applied on behalf of the defendants here. Um, this case involves allegations by a pretrial detainee who was at Twin Towers, um, who alleges his civil rights were violated under the eighth and 14th amendments. Um, the defendants, there are about 30 defendants who are a mixture of custody staff and medical staff who were, um, at Twin Towers. Um, the base claim starts when plaintiff alleges he was attacked by about 30 to 40 inmates. Council, we know the facts of the case. Um, but I just wanted to clarify with you that, you know, this is an interlocutory appeal, so we can't get into any of the Thank you. All right. So tell us why. Tell us why the district court aired and denying some summary judgment for qualified immunity. Um, with regards to the I'll break it up between custody staff and medical staff. So with regard to the custody staff, um, we believe that, uh, plaintiff did not establish that there was a did not demonstrate there was a clearly established right here. Um, the cases that are relied upon by the plaintiff in their brief, uh, primarily, I believe Robinson versus Princey, um, involved a and also the Castro case involved placing inmates, um, into a situation where they faced a substantial risk of harm, and they failed to take reasonable measures to prevent that. In our case, there's no council. Could we agree on what the clearly established right was in this case? What was the clearly established right in this case that was proffered by the plaintiff? Um, well, I believe the plaintiff, um, indicated on. I'm sorry. I don't have his brief in front of me, but, um, well, in order for us, I'm sorry. In order for us to determine what law applies, we have to first determine what right was being asserted. I agree. I completely agree with that. So my understanding is that they're claiming, um, that inmates should be protected from being attacked by other inmates. That's that's my that's the Castro case, right? That's why we recognize that most directly. So why isn't that? Why was there an error as to that? I mean, the allegation is that guards knew that he was being attacked, and they did not intervene. I'm summarizing. But right. Yes. Okay. So we have to accept that is true. And why is that not actionable? We don't believe it's actionable because, in essence, in relying on the Robinson case, they're saying that we placed him, uh, at in an area where he was at substantial risk or placed him in substantial risk of harm. There's no allegation here that, uh, the prison officials were placing him in a dangerous area. There is. There is. There's an allegation that he was being attacked, and rather than intervening and sounding the alarm, they allowed him to continue to be pummeled again. My summary. My paraphrase. But why isn't that act? It just seems to me to be not something we can wade into here. Um, yes. Well, I think from a basic standpoint, my perspective is they're saying that we placed him in a dangerous area or a substantially an area of substantial harm. But he was at Twin Towers in one of the dorms, and there's no indication or allegations that the prison officials knew ahead of time that there was going to be a fight or an ambush of any sort here. And wasn't that true in Castro as well? I just I don't know that you've got a viable argument on my scorecard, and I want to take all of your time. But this seems to be a really tough argument for you. If the allegation is that he was being attacked and that there was I'm not, you know, essentially, essentially, in the Fourth Amended Complaint Council, it's specifically alleged that the defendants witnessed an assault, declined to intervene and assist in the aftermath. And then, additionally, Mr Bus Canyon has alleged a litany of factual allegations, including being denied medical care, harassed and mistreated in the months that followed. How does that? How is there not clearly established constitutional rights to be free from that kind of treatment? As as you have described it, at least with regard to the medical care, I certainly I don't disagree with you with regard to the medical care issue. However, I feel that we have been able to establish that the defendants acted reasonably here, especially with regard to the medical defendants. What is to custody as to the excuse me, just let me interrupt it as to the custody defendants in terms of apart from the medical care issue, the allegations of witnessing assault and declining to intervene as they witnessed that assault. And that would apply to what you refer to his custody staff, correct? Yes, it would. But I would also say that if there were truly 30 to 40 inmates who were writing or fighting, I don't think there would be a duty on to the fray with regard to that issue or to sound an alarm. Certainly to sound an alarm. I don't disagree with that. It seems to me that the allegations are really different as to the what you're calling the custody, which is helpful to me. The custody staff that incident, which my scorecard just seems insurmountable at this point. If we take plaintiff's allegations is true. And then there's this allegation by the by the by the plaintiff that he received no medical care zero. And you have quite a mountain of of evidence that he did. So what about that? Is that do we treat that differently? I believe we should treat that differently. Um, we did. I believe that we showed that the defendant medical staff acted reasonably here. We had a declaration from the chief medical officer who was also a board certified internist and actually treated Mr Buscanyan, who opined about the treatment being reasonable. We also have, um, gosh, hundreds of pages of medical records of the plaintiff. C. T. So Council Council, you're going into the weeds. You're going into the factual records and wanting us to opine on on whether care was it was not reasonable. Plaintiff's allegation is he didn't receive any. Right. Um, yes, I understand that. But I guess my one of the concerns I have here is that the magistrate underlying magistrate in the case, um, wouldn't consider the declaration of the treating physician and supervising physician Dr T off a lot as well as the medical records which were attached to the plaintiff's several complaints. But Council, we don't get to review those evidentiary rulings on this interlocutory appeal. Uh, yes, and I understand that position, but I don't believe that we can take Mr Buscanyan's, um, conclusory contentions that he didn't receive any medical care for purposes of that analysis. Why not? Because it's a verified complaint in our case. Law says that if it's a verified complaint, it may be used for the truth of the matters asserted in that. So why couldn't we take his verified complaint as stating the facts? And I do appreciate that the complaint is verified, but I don't believe that the plaintiff himself being a lay person and not a physician can issue opinions or make opinions about the quality of the medical care or the fact that he simply didn't receive it. Of course he can. If he's the person who's experiencing this, he can say, No doctor came to see me. They didn't treat my broken bones. They didn't give me any medication. That's not opining on the reasonableness of the care. It's just stating the historical facts. I believe he does also opine on the reasonableness of the medical care, and I I truly feel that, um, the medical records and the declaration demonstrate the reasonableness of the actions of the medical staff here and what I would like to see happen. I guess I'm also troubled by the ruling of the court where they indicate that the plaintiff could have retained an expert who probably would have refuted Dr Teopolis testimony. And I feel that that that that's normally the not way, not the way things are decided, and that we should at least have the opportunity to address those concerns. The council that that can be done a trial. This is the summary judgment stage. Yes, I understand. Um, I'm going to go ahead. Am I correct? By the way, with respect? I mean, I'm sorry. In terms of the exclusion of the bus canyons, prison medical records that was essentially, uh, sought by the defense. Is that correct? Um, we we presented them as evidence. And, um, if I understand what you're Yes. And it was. And you and and those records were excluded. Yes, they were. Okay. Counsel at trial. Won't the standard be whether or not the medical care was whether the defendants, the health care defendants demonstrated deliberate indifference? Won't that be the standard? Yes. Well, I believe it's considered reckless disregard under the Gordon case because the plaintiff is a pretrial trial. Forgive me. Reckless disregard. So today you're arguing reasonableness. I don't see you arguing that this evidence in the record, um, belies any so that the showing he would have to make that any reasonable juror would not be able to find reckless indifference here. I don't I don't. Is that your argument? Or you are? You're arguing that was, uh, as to the reasonableness of the care, which confuses me so much, right? And I apologize. I I suppose I'm equating reasonableness by showing the absence of reckless disregard here by the medical defendant. So I apologize if I caused any confusion with that. Well, but it is an important point. So what? What precisely is it that you think the district court error was as to the medical defendants as to the medical defendants? I believe the error was that they should not have accepted, um, all of Mr Buscanion's statements about his medical care, that it was not of the evidence that was submitted with the declaration of the chief medical officer, Dr Teofilov, as well as all the medical records that demonstrate he received medical care every day between July and August of 2015 and pretty much every day after that. I think that means counsel forgive me for interrupting, but I think that means what you're telling me is you think on this record that summary judgment was mandated because no reasonable juror could could could find that plaintiff's allegation is correct. The allegation being that he received no medical care. Well, I certainly believe that in the case. Yes, but we felt that qualified immunity was appropriate on behalf of at least the medical defendants here in the case for the reasons that we've stated in our moving papers. And I wonder if I might reserve the rest of my time. Um, thank you so much. All right. Thank you, Counsel. We'll hear from the plaintiff Council. Mr. Buscain, Plaintiff Council. Mr August. So I was can you hear me? Um, you're breaking. You're breaking up. Could you state your name for the record, please? Yes. Yes, Your Honor. Mr August is supposed to switch on my video. Your video is on, I believe, and it's Ms. Okay. May I please the court? My name is Danny Solomon, and I represent the plaintiff of Pele, Robert Buscain. The district court's denial of the defendant's motion for summary judgment should be affirmed for three reasons. First, the scope of this court's review on an interlocutory appeal from denial of summary judgment is limited to questions of law. The defendants raised unreviewable questions of evidentiary sufficiency. Second, even if the defendant's arguments were within the scope of this court's limited jurisdiction, when you take the facts and the lightness favorable to this comment, it's clearly shown that the defendant's violated this clearly established right to be freed from violence at the hands of other inmates and to adequate medical care. Finally, the district court's evidentiary rulings were correct. But even if the district court abused its discretion, it still found that disputed issues of material facts precludes summary judgment. For these reasons, we asked the court to affirm the decision of the district court. Counsel? First, was the allegation of the plaintiff that he received no medical care or that he received inadequate medical care? Your Honor, I think that the allegation is that he received inadequate medical care. The testimony that the district court relied on to refute Dr. Tuokalo's expert opinion was that he was denied medical care. Well, those are two different things. Wait, wait, wait. Right there. Which is it? Denied medical care or inadequate medical care? Counsel? Well, part of an inadequate medical care is the fact that if you sought medical care, you might have been refused treatment. So when the plaintiff alleges that he was not provided with adequate medical care, part and parcel of that is whether the care you did receive was appropriate and also what you presented for treatment, whether you were treated or not. So is it your position that he is alleging in some instances the care was inadequate and in other instances it was refused? So I think that's the overall scope of the right that he's alleged, alleged being violated. But the district court did not rely on his on his testimony as to whether to the standard of care. There is a number of allegations in the in the Fourth Amendment complaint, which which stated that he was he was denied medical care when he presented for treatment. And so when the district court, this is an important point because whether or not he received no care is distinctly different from whether or not he received inadequate care. And so it would be helpful to me if you would really specify what his allegations were. I think you're saying it's part and parcel, but it's important to me in resolving this case, what his precisely what his allegation is. Sure. So the clearly established right is this. No. What were his claim for? Did he say they refused to treat me or they treated me, but the treatment was inadequate. Which did he assert? I think it's both, Your Honor. Okay, that's fair. It's not. I believe council. I believe that the complaint states that immediately after the incident in July that he checked into the clinic with the help of his brother. His brother was also incarcerated there and came to his it's alleged. It's alleged that with the help of his brother, he then received x rays and pain medication and was placed in a wheelchair and then transferred to Twin Towers Urgent Care Clinic. Isn't that also in the allegation and the Fourth Amendment complaint? All right. So then at that point in time, he's given some medical care and attention, and then he alleges that it was inadequate. Correct. That's correct. I mean, I think the inadequacy of the allegations span over the course of his time at the prison. I think defendants mistake the volume of medical care of medical records for for reasonableness of care. Obviously, if there's something there was something going on here where he had to continue to seek medical care. And so just because there's hundreds of patients medical records does not indicate that the care provided during that time was necessary, reasonable or that he was ordered. But Council, forgive me for interrupting, but you keep everybody's using reasonable as the standard here. That's not the standard, right? That's not the correct standard. The adequate medical care. Oh, you need to show reckless disregard, I believe that when analyzing the legal standard for whether you received adequate medical care instead of all refers to it as the constitutional right to adequate medical care. The council could we go back to the point Judge Bennett raised when he said his brother took him to the clinic? Wasn't the point that the brother had to take him to the clinic because the jail attendants would not provide him medical care? Yes, that's correct. That's correct. Your honor. The fourth amendment complaint alleges that his brother dragged into a shower to clean them up after the defendants refused to provide him with the initial medical care. And only after only after that did he finally receive treatment well after the assault occurred. Yeah. Your honor, I'd like to turn to the one of the other entry points that council raised in regards to the doctor to upload. Um, doctor, the district court properly excluded the declaration of Dr Teo Teofilo for three reasons. Council, is that issue before us? Do we get to opine on the evidentiary rulings? I don't think so, Your Honor. It's our position that that that all the rulings of the district court are well outside this court's scope of this court's jurisdiction. Council, what about the published opinions we have where we have done exactly that in the context of qualified immunity in order to figure out what the universe of uncontested facts is? Wait for qualified immunity. We still have to take the facts and view them in the light most favorable, right? And so, right. So we have the Sandoval case, for example, where we have reviewed evidentiary rulings in the times done that. And it's your position today that we don't have jurisdiction to do that. Is that correct? Um, it's our position that the evidence that the way in which the defendants are challenging evidentiary rulings are outside the scope of this court's jurisdiction. Okay, because the defendants, okay, essentially, sorry, that's my fault. I interrupted you. I meant so. So could you could you finish that thought? Because because yeah, so defendants essentially argued argued that had the district court had the district court properly considered the evidence that they claim was improperly rejected, then the record would be undisputed in their favor, that there would be no evidence supporting this kind of allegations. So while this court may look at the evidentiary rulings, the way in which they're trying to use the evidence that was excluded in the district court is not a type of inquiry that this court can take on appeal. Okay, so let's assume for a minute, just for the sake of argument, that we have jurisdiction to review the evidentiary rulings. If you could just humor me for the sake of the discussion, because I just wanna pin down what your position is. If we have the ability to look at that, was the district court wrong to exclude the doctor's declaration and the medical records? No, Your Honor. So I'll start with the medical records. The medical records were probably excluded. The medical records were attached to the Declaration of Defendant's Counselor, Ms. Geisler. She does not have the records of personal knowledge to authenticate the medical records. And perhaps recognizing this, her declaration attests that they were really being authenticated by Dr. Tiocolo. But for his part also, he does not have the records of personal knowledge to authenticate the medical records. In his 30 page declaration, he does not cite to a single record. He just summarily opines them and quotes from them. But this court recognizes that you need to either write the document, use it, sign it, or see others do so. And he was merely supplied these records to testify in support of summary judgment. The fact that certain records were attached to this kind of work-amended complaint is not material. Defendants have made no effort to figure out how those documents lined up with the records they attached in support of summary judgment. Mr. Rawlinson's point is that essentially this court has limited jurisdiction because this is an interlocutory appeal, correct? Correct. And the court has jurisdiction over denial of qualified immunity only to the extent that it turns on an issue of law, as this court has previously held, correct? That's correct. And then following up on Judge Kristen's point then, in terms of the analysis of qualified immunity, do the particularly the prison medical records of your client not assist the court in making that legal determination in terms of a legal issue that's presented and the adequacy as which it's been alleged? This court or the initial court? This court. This court has the jurisdiction, does it not, perhaps to consider certain evidentiary matters if it's in the context of making a legal determination as to qualified immunity. That's essentially what the Sandoval case stands for. Sandoval v. County of San Francisco was signed by this court last year. In that context, this court would have some jurisdiction to review an evidentiary matter if it is in the context of the legal issue of qualified immunity. Isn't that correct? I agree with that. All right. But do you think that circumstance is presented here? I do not. I think that the defendants are trying to use the evidence excluded at the district court level to argue that the evidence is undisputed or that there's no evidence supporting this client's allegations. It's all about framing. This court said in the state of Anderson v. Marsh that whether this court has jurisdiction turns on how the argument is raised on appeal. And the defendants spend the entirety of their brief arguing that the record is undisputed or that there's no evidence to support this client's claims. I think what's telling is the fact that their opening brief was objections to the report and recommendation. Those arguments may be proper to be submitted to a district court, but they're not proper in front of this court. Well, if I can just follow up on the matter of the medical records, because essentially the prison medical records were excluded for lack of authentication under Rule 901 of the Rules of Evidence, correct? Yes. And generally, is it not correct that prison medical records usually, in most of these cases, are somewhat self-authenticating? They are what they are. And under Rule 901b-4, there can be alternative analysis with respect to the admissibility of the medical records. But the whole issue came down to the fact that the magistrate judge found that they were not sufficiently authenticated. Wasn't that the basis of the record here? That's correct, Your Honor. In terms of authentication, I may interrupt you, but just again in terms of our analysis under the legal issue as to qualified immunity, if the medical records were excluded strictly on the matter of authentication, does that not attend to our legal analysis in terms of the qualified immunity question, as suggested perhaps by Judge Christian? It's a legal issue we're dealing with here, but in the context of the legal issue, the matter of the prison medical records and whether the allegations here may assist the court in that legal analysis, would they not? Your Honor, I think it's a fine line, but when the courts are doing that, the legal analysis, you have to take the facts in the light most favorable to Visconian. So there are certain allegations in this complaint which may refute the medical records. A number of times he alleges that certain medical records or other documentation was forged or something was written down that did not occur. And so within the legal analysis, Visconian's factually supported version of events in the verified complaint needs to be taken into account. To go back to your earlier point, Your Honor, there are many ways to authenticate medical records, but this court has stated that when a party attempts to authenticate documents through personal knowledge, through an affidavit, it needs to be done through personal knowledge. And so although they could have submitted a different way of authenticating the documents to the court, they chose to do so through an affidavit, and both affidavits they submitted did not have the requisite personal knowledge to authenticate the documents. Turning to Dr. Teofilov's expert opinion, to the extent that this court can consider it in its legal analysis, he was probably excluded for three reasons. Dr. Teofilov was not introduced as an expert until summary judgment. Both judges below said they would not have granted summary judgment based on his opinion without Dr. Teofilov, without giving Visconian the opportunity to examine Dr. Teofilov and to submit an expert opinion. Second, his expert opinion lacks foundation. In support of his expert qualifications, he submitted one paragraph of his complaint stating that he is a licensed physician, board certified in maternal medicine, and he's the chief physician at the jail. It was hardly an abuse of discretion for the court to determine that a single paragraph was an abuse of discretion. Does it matter that in Sandoval, we said that the district court abused its discretion because it summarily sustained the objections of the defendants, and the objections were frivolous? Does that make a difference in this case where the magistrate judge did not summarily affirm the objection but went through the reasons why the evidence was excluded? Yes, Your Honor, I believe so. I think the magistrate judge's opinion was well reasoned, and the district court judge adopted it wholeheartedly. The district court judge had the opportunity to reconsider these evidentiary rulings and decided in favor, as the magistrate judge did, of Visconian that this evidence was inadmissible. Your Honor, for all the reasons discussed, we ask that this court affirm the decision of the district court. Thank you. Thank you, counsel. Rebuttal? Thank you very much. Yes, Jennifer Geisler, once again, for defendants and appellants. So just a few points. I think that with regard to Dr. Teofilov, he actually treated Mr. Visconian while he was at the jail, and part of his job is to actually review the medical records for the inmates that are being treated there. I think if anyone was appropriate to authenticate the records, it would be Dr. Teofilov, and there's never been an allegation by the plaintiff that his medical records were forged or false in some way, and I think that's demonstrated by the fact that he attached them, hundreds of pages, to his complaint again and again. So I think, too, what we're asking, really, is just for a fair shot at an analysis of qualified immunity and asking that the case be remanded to the trial court. So, you know what, if plaintiff wants to examine Dr. Teofilov by way of deposition, that's fine. He can oppose the motion, and then we would at least have the ability to address the objections or positions asserted by the plaintiff. All of that can still happen, counsel. All of that can still happen, even if the denial of summary I understand, but I'm talking about the assertion of qualified immunity in this case, and I think that, you know, the strongest argument does pertain to the medical defendants. I really believe that we have to consider some of the facts here. I understand it's a legal analysis, but as we've all referenced Sandoval this morning, I think it would be appropriate for counsel. As I noted, Sandoval, on page 667, the reason that the Court of Appeals looked at the evidence was because it was persuaded that the district court abused its discretion by summarily sustaining the meritless objections to the evidence. We don't have that here. Well, I don't think that, I mean, I can't obviously be sure, but I do believe that it was error to exclude those things, and here we have a situation where we have to have some facts upon which to base the qualified immunity analysis. Yes, we take the facts in a light most favorable to the plaintiff. That's what we're supposed to do when we have a qualified immunity issue before us in a locatory appeal. We're not supposed to try to get the facts in the light most favorable to the plaintiff in this case, and you're asking us to weigh the plaintiff's version against the medical records. And I know I'm out of time. May I respond to that? Yes, please. Thank you so much. I believe that that counsel for the plaintiff actually indicated that part of the allegations were inadequate medical care. That goes to the standard of care, and we don't have to, nor should we, accept Mr. Buscanyan's position on that. Why not? Our law says that. Our case precedent is very clear that we have to consider the facts in the light most favorable to the plaintiff. How do we get around that? We get around it because Mr. Buscanyan would not be qualified to render medical opinions about the adequacy of his medical care. What about the severely beaten that no one came to his medical aid that his brother had to drag him into the shower, clean him up, and take him to the clinic? What about that allegation? So why would we need to look at the medical records to determine whether or not that particular allegation survived? The medical records are very helpful because they are timed in terms of when he is seen by someone, what is done, x-rays being taken. Those are all things that are automatically documented. We take his allegations in the light most favorable to him. Can the medical records refute his allegation that no one came to his assistance that his brother had to drag him into the shower and then take him to the clinic? I think partially. The medical records, because there's no contention that there's something wrong with the timing or the date system that they use in their medical chart. I believe that would be helpful in that analysis. Thank you, counsel. Thank you kindly. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, Bennett